We'll turn to our final case of the day. 19-1414 GDHI Marketing v. Anstel Marketing. We have three counsel on here. Is that correct? Yes. Is Mr. Quinn going to be participating? He is, Your Honor. I'm bringing him up right now. Okay, good, good. Okay, Mr. McGill, you may begin. Thank you, Your Honors, and may it please the Court. This is GDHI Marketing LLC v. Anstel Marketing LLC, et al., number 19-1414. My name is Joshua Kirk McGill of Godfrey Johnson. For the appellant, GDHI Marketing, which for convenience and consistency with our briefs, I will refer to by its trade name of Godabo. As why of background, Godabo appeals from a dismissal with prejudice of its unfair competition claim arising under Section 43 of the Lanham Act, 15 U.S.C. Section 1125A. The defendants below, appellees here, are all participants in Godabo's only competitor in Denver, the HOMAG, which for convenience I will refer to as the THM defendants. Godabo alleged below that the THM defendants transmitted two false commercial statements about Godabo to current and prospective customers of both firms by email and also transmitted by U.S. mail false statements about their own business in a media kit that the THM defendants used to advertise their business to prospective customers. But the THM defendants, I mean, that's a collective reference to them. The THM front range is a defendant for whom there was considerable discussion about their activities, right? That is correct, your honor. The allegation and THM front range is not listed as a defendant in claim eight, is it? That's correct, your honor. The the issue is, is that the defendants, we allege, worked together to send out the emails and the media kit, it specifically is a document that is put together by both the franchisor and then transmitted by the franchisees around the country. So that document is a collective document of all of the defendants. The specific emails were sent out by the local defendants, but the allegation is that they were sent out effectively to protect the franchise, which the national defendants have an interest in. What I'm trying to sort out is who in this action is subject to liability. And if claim eight doesn't list THM front range, why is THM front range a proper LE is the first question. And the second question is, it's important because the August 31st email relates to THM front range and their activities, right? Yes, your honor. And frankly, that is one of the things that I think an amendment to this would because there were a number of claims with the Sherman Act claims that crossed over into the Lanham Act claims. And because the only one appealed was the Lanham Act, I think there was recognition on our side, that upon remand, there would be a need to clean up the complaint, get rid of the claims that were not appealed, and ensure that we have only the correct defendants in the case that I think this is a pleading, which frankly, could use some editorial assistance for Correct, your honor. Once it once the district court reached the motion to dismiss without holding a hearing, motion for leave to amend was preemptively denied. So it could not be requested without violating the court's order. Well, you could have requested a motion to you could have filed a motion to amend at any point. Why? Why were you preemptively denied the right to do that? I don't know, your honor, the district court indicated that she felt that it would any amendment would be futile. And as a result that she was dismissing with prejudice without leave to amend. Now, it is worthy of note that we had amended previously before any motions to dismiss were filed to clean up some of the claims before so we had used our amendment of right and we have to concede that. Nevertheless, as we discuss in our brief, the we feel that particularly when the district court's ground for dismissal of this claim was based on a failure to plead certain words related interstate commerce, which she indicated were required, that leave to amend should have not been preemptively denied. We should have at least had the opportunity to ask the district court and explain why a leave to amend would have been appropriate. But once I guess my point is, after your initial amendment, what as a right? Why couldn't you file the motion for leave to amend number one, number two, in your response to the motion to dismiss the only request for amendment related to the Sherman Act claims, didn't it? Yes, your honor, that is correct. I don't hear on the Sherman Act claims. And so why is that helpful to you? It's helpful, your honor, because the the sole reason for dismissal of the Lanham Act claim was the lack of nexus to interstate commerce. And that's that was often pleading is his that I mean, if it's if it's there, it's not there. Well, no, that that's the point your honor is, is that it was there as cited in our brief, as to the media kit are pleading that is the actual complaint specifically said that that media kit was transmitted by us mail, which is a channel or instrumentality of interstate commerce. Well, that raises the set that raises another issue, which is when did you make a channel of interstate commerce argument in your motion to dismiss? I saw no such argument, as it were. Please go ahead. Apologies, your honor. The words channels or instrumentalities were not used by counsel who argued that portion of the claim, but the arguments themselves that we need not show there was a substantial effect, we need to merely show that they were transmitted. Those arguments were made. Well, and cited in our brief. Well, I mean, that's a distinction with difference. I mean, if you're making a channels or instrumentalities of interstate commerce, what you're saying is, if you put it into, if you use the internet, or if you use the mail, that's it. That's enough. You've got interstate commerce. That's a that is a distinct argument from an argument of whether you had an effect on interstate commerce. Yes, those are instrumentalities argument wasn't made was. I disagree, your honor, because we cited specifically to the Sixth and Second Seventh Circuit cases, which were channels and instrumentalities cases were the Sixth Circuit specifically held that as long as you pled it was an email that was nexus under a channels or instrumentalities analysis. So while the the attorney did not put those words in their brief, they cited two cases that were decided as the centerpiece of their argument, they cited two cases that were decided on a channels or instrumentalities basis, that is no neck, no effect on interstate commerce need be shown. The mere fact that was sent by email is dispositive. And go ahead. I'm sorry. Well, I'm following up on what you said. But let me just interject this and then you can follow up more judgment. You have an obligation to alert the court to what your argument is. And all the argument in district court related to substantial effect on interstate commerce, if anything, and I don't see how you did anything to alert the court, citing a case doesn't alert the court to an argument. The judge doesn't have an obligation to read through the cases to see what sort of theories appeared there that weren't raised in your briefing or argument. Yes, Your Honor, inciting Doe versus Smith below in our briefing, we didn't just cite the case, we told the judge what the holding was. And we said that the holding was is merely pleading the use of email is sufficient to establish an extra state and next interstate commerce, even when the plaintiff is not alleged to email ever cross state lines. So I think while there is no doubt that under ideal circumstances, that that would have been more explicit. And therefore, I see your honors concern and absolutely agree with your honors concern that that could have been better brief. But it was not unfairly not put before the court or put before the defendants, it could have been done better, period. There is no argument and should not have been done more clearly. In fact, in the brief, you're you incorporate the argument under the Sherman Act. I mean, you didn't even make an argument in the land related to the Lanham Act as it relates to interstate commerce. And isn't that important because we're focused on the specific statements in question, whether they traveled in interstate commerce, right? That is correct, Your Honor, whether the emails and the media kit themselves, those communications traveled in interstate commerce. And and so so the incorporation of paragraph 14 of the complaint, how does that get you there? I think your honor that the the six circuits, the six and seven circuits in saying it just saying it was transmitted by email, and presumably just saying it was transmitted by post email, that is sufficient to establish the nexus that is that is what we are relying on because the defendants in the excuse me, the plaintiff in Doe versus Smith did the same thing that we did here, which is all they said was the email was it was made a false statement was made by email. That's it. They didn't say it moved in interstate commerce. They didn't say it substantially affected our state commerce. They just said it was an email. And the Sixth Circuit said that's enough. An email is a channel or instrumentality of interstate commerce. So merely pleading that it was in an email is sufficient. Merely pleading it's in postal mail is sufficient. You don't have to make an allegation that it moved in or substantially affected interstate commerce, because the United States Supreme Court has specifically held that Congress may separately regulate the channels or instrumentalities of interstate commerce, even in their purely interstate operations, regardless of whether they moved in or had a substantial effect on their state commerce. It's a separate ground for jurisdiction. And that's, you know, you may have a channel. But where did you argue the balance of what you're telling us today? Did you honor the district court? I didn't see it. It was not extensively discussed below. We cited to the cases and discuss the two cases in which that argument was made. There were a lot more arguments below because of the other claims and because the substantial effect on their state commerce is most certainly necessary under the Sherman Act. And therefore, there was a lot of discussion of that. Once the Sherman Act claims were dropped on appeal, then the bulk of those arguments simply aren't relevant anymore. What's relevant is the portion that discusses the two channels or instrumentalities cases. It's a relatively small part of the briefings, relatively small part of the claims. Once the channel is established that ipso facto, even if nothing was gone into state, it still is an interstate delegation. Yes, Your Honor, the United States Supreme Court has said that Congress may regulate the purely intrastate operations of an interstate channel. And because this court has already held in the Utah Lighthouse case that the Internet is generally a channel of interstate commerce and emails travel through the Internet, then the email is no different than a truck on the highway or a piece of postal mail traveling through the postal service. It is categorically interstate commerce. Establish a nexus between the media kit and the interstate commerce. Correct. In that case, it was specifically on that. Have you even played that? Yes, Your Honor. It was explicitly pled. And the district court quoted where in our in our actual complaint, we stated that the media kit media materials were transmitted across state lines through U.S. mail and United States mail is categorically a channel of interstate commerce. And therefore, at the very least, the district court plainly erred on inciting the very place in the complaint where we say postal mail. And that assumes that your theory is properly before us. And that still remains to be decided. But OK, fine. Go ahead, please. I would say, Your Honor, and I think we make this point in the brief, which is this is the jurisdictional element. And therefore, on a matter of jurisdiction, the court should be more lenient in hearing new arguments on appeal than they would be in any other circumstance. And why should we be? I mean, ordinarily, the question of number one, this isn't a question of subject matter jurisdiction of this court, is it? It is, Your Honor. How so? I mean, what case you have? This is a question of whether there is a jurisdictional nexus in this statute. That is a distinct inquiry from whether we have subject matter jurisdiction to consider the case. And if you have a case that says this is a question of subject matter jurisdiction, what case is that? No, I misspoke, Your Honor. I agree with you. No, it's a question of the subject matter jurisdiction of Congress, not the subject matter jurisdiction of this court. I apologize. And then let's move to well, then there's no particular lenience that comes from that. And if the lenience that you're talking about is the question of we have to be alert to our own jurisdiction, generally, the way that that's a one-way ticket, because the way it works is we, you know, you don't, if you're challenging jurisdiction, we will consider that at any point. But if you're trying to get jurisdiction, we don't have to, we don't have to honor any, we can apply forfeiture principles as we ordinarily would, right? No, the court absolutely can. All right, then, then we're back where we were before, which is whether there's anything here that's sufficient to allow preservation of this issue. And we would, we would say, Your Honor, that on the media kit issue, that at the very least, that was so plainly error. And that error was brought to the district court's detention. And the district court discussed the fact that we cited in our, in our, both in our briefing and in our complaint, that that went by a U.S. mail, but the district court said nothing about that. The district court seemed to take notice that it was transmitted by U.S. mail, but didn't seem to think that was important, even though it was brought to the district court's attention that that is interstate commerce, that that crossed state lines. Again, that is a specific allegation of crossing state lines. So even under the district court's interpretation, the district court's own analysis is contradicted by the very facts the district court cited in that eight footnote. You concede that if you did not preserve the issue below, you lose? I think we have to concede that it is, no, actually, take it back. No, the court can choose to consider the argument on appeal, but the court need not do so. Frankly, we're on the mercy of the court on that issue. We would ask the court to consider the importance of the issue and the magnitude of the error and take those things into account when making that analysis. But it is certainly well within this court's discretion to decide either to consider the arguments, even if they've decided that you decide it's a new argument on appeal, or to reject the arguments. We would have no objection one way or another. It's within the court's discretion. And then let me, considering whether to exercise that discretion, let me ask this. What would seem to me to militate against that is we haven't made a determination previously, have we, as to whether the instrumentalities of interstate commerce is an appropriate theory for jurisdiction under the Lanham Act? We haven't done that, have we? I'm out of time. I'd like to leave it to the court to answer the judge's question. Your Honor, I would say the Utah Lighthouse case does precisely that under the Lanham Act trademark action, which in that case, the court says is the same as an unfair competition action. The court specifically says the internet, which again, email travels through, the internet is a channel of interstate commerce and under the Lanham Act jurisdictional element is their source sufficient. It doesn't meet the commerciality element, but that's not in question in this case. It does categorically meet the jurisdictional element. Thank you, counsel. Thank you, Your Honor. There's another question from the bench. Any question? Okay. Thank you, counsel. Ms. Lockwood, are you the first to come up or how are you going to do this? Thank you, Your Honor. We're dividing our time. I'm going to go first and Mr. Quinn will go second. That often doesn't work very well. We'll see what happens, but Mr. Quinn may have very little time. Go ahead. May it please the court. Ellie Lockwood on behalf of Claire Lindsey, Ellen Smith, Barbara Robles, Annie Mullen, and Anstel Marketing LLC. As the court pointed out, Anstel Marketing is not a party to the Lanham Act claim and was not a defendant to that claim and is not a proper party on appeal. The individual defendants are employees of Anstel Marketing LLC. This is really a would have, could have, should have, but did not case. The district court properly dismissed Godabo's Lanham Act claim. The district court's dismissal should be affirmed in all respects for three reasons. First, Godabo failed to adequately plead its Lanham Act claim. It utterly failed to even allege interstate commerce element, which is a required element that everybody concedes. Second, Godabo did nothing to correct this glaring deficiency despite being on notice for almost a year before the district court ultimately ruled against it. And third, now Godabo asked this court to reverse the district court's findings based on allegations that do not exist and arguments that were never made below. This court should decline to do so. The district court below was properly dismissed the Lanham Act claim because Godabo's pleading was deficient. There's no dispute that the interstate commerce requirement is an element of Godabo's federal Lanham Act claim that it was required to plead that element and that it failed to do so. There's one reference in over 100 paragraphs of the amended complaint that refers to interstate commerce and that is in paragraph 14 of the amended complaint. And that paragraph is unrelated to the Lanham Act claim. It's unrelated to the interstate commerce requirement and element of the Lanham Act claim. It relates solely to the Sherman Act claims. It wasn't incorporated by reference in the part of the claim addressing Lanham Act? It was not, your honor. If we look at... That's all right. It was incorporated by Godabo in its response in opposition to the motion to dismiss. But if we look specifically at that paragraph 14, we'll see that first of all, there's no reference whatsoever to the media kit that Mr. McGill refers to over and over again. What's referenced in that paragraph in the first sentence is the use of U.S. mail for the direct mailing of marketing materials. These are specifically the materials that Godabo and Anstel Marketing produce. It's the actual magazine that these companies produce that is directly mailed to homeowners. There's no reference whatsoever to the allegedly false statements in paragraph 14 of the amended complaint. It has nothing to do with the Lanham Act claim or the allegedly false misrepresentations. In fact, in the amended complaint, there's only two references to the media kit. That's in paragraph 37 and 38 of the amended complaint. And if you look at those, there's no reference at all to how the media kit is provided to customers, which are the businesses in a very specific market, a local market, the Denver metro area. What about paragraph 97? Paragraph 97 incorporates all of the previous allegations that have been made in this complaint, which would include paragraph 14, right? That's correct, Your Honor. But paragraph 14 is unrelated to the false representations. Yes, but that's different than the response you gave to Judge Hart, which was there was no incorporation at all, right? That's true. I correct that. My understanding, I must have did not understand his question correctly because I thought he meant a specific reference as in the response to the motions to incorporation of that argument related to paragraph 14, and that specific reference is not in the amended complaint. All right. With respect to the media kit, there are no allegations as to how that media kit was provided to the potential customers and customers. Godavel's counsel has made a big deal in the briefing and today about how the district court basically ignored that Godavel's allegations that the media kit was sent out to businesses in the Denver metro area using U.S. mail, and that's not in the record anywhere. Why not? Because Godavel never alleged it in the amended complaint. It didn't allege it in the amended complaint. It didn't argue it in opposition to our motions to dismiss. It was this issue, this fact was raised for the first time on appeal, and there's no support anywhere for what Godavel is claiming. What about the Grubbs case? What do we do with that? I don't think the court need even consider that because first of all, there was a waiver by Godavel's counsel because it failed to address this argument that it now makes on appeal with the lower court. This general instrumentality of interstate commerce was never alleged, and it was never argued by Godavel in opposition to the motions to dismiss, even though the defendant specifically moved under Rule 12b-6 to dismiss the Lanham Act claim for failure to plead the necessary interstate commerce element. And secondly, this court is obligated to conduct a de novo review of this issue of the dismissal and the pleading standard. And if you look at the allegations in the complaint, which is what is at issue and what is in the record, there is no dispute that Godavel never alleged anything whatsoever with respect to the false statements either being sent in interstate commerce or for the intrastate issue that the statements have a is a general instrumentality of interstate commerce. Because this, they weren't alleged. I thought Mr. McGill said they cited to Sixth and Seventh Circuit cases that incorporated the instrumentality analysis. When did they do that? I see that in the opening brief on appeal. I don't see that in response to the opposition to motion to dismiss. In the opposition to the motion to dismiss, what Godavel did was refer back to its argument made with respect to the Sherman Act claims and the interstate nexus requirement, which was completely separate and did not address the allegedly false misrepresentations, had nothing whatsoever to do with the Lanham Act claim. Were Grubbs and those sorts of cases discussed in connection with the Sherman Act claims? Because I mean, the district court does talk about Grubbs in its order. So where did it get, did it just do that through its independent research? It did that. My understanding is that it did that through its independent research. I don't see that in Godavel's opposition. And if it was relying on the interstate nexus standing requirement for the Sherman Act claims, and that's all that Godavel did in its opposition, then it wouldn't have addressed and didn't address the interstate commerce requirement for the federal Lanham Act claim. Well, the fact that the district court talked about Grubbs, I mean, what effect does that have in the question of preservation and whether it's something that's appropriate for us to reach now? In terms of preservation, the argument was never made by Godavel. It had an opportunity to do so. It was on notice. It failed to do so. The fact that the district court addresses an issue, we consider the issue appropriate for us to address. So even if Godavel never argued a point, never suggested a theory, if the district court on its own initiative addresses it, that present the argument, present the basis of the argument now being made before us. It was presented, but it's not necessary for this court to even consider that argument because it is a de novo review by this court. And based on the allegations contained in the complaint, there was no allegations whatsoever made by Godavel in the complaint that show anything related to the interstate commerce element for the Lanham Act claim. I guess more to the point, was the district court using Grubbs in support of an instrumentality theory or the substantial effect on interstate commerce? I'm looking back at it and it appears to have been the latter. In other words, even if it cited Grubbs, it wasn't doing it to pursue an instrumentality of interstate commerce. I mean, what's your, do you agree with that? At least my allegations in the complaint suggest and say specifically is that this, the actions at issue in the federal Lanham Act claim relates solely to interstate activity. There's been no allegation that emails cross state lines, that emails were sent by people out of state. Everything was in the Denver metro area. And so the court was focused on this interstate activity, which requires for the element to be sufficient, that there'd be an allegation that the intrastate activity has a substantial impact or effect on interstate commerce. But those allegations don't exist in the complaint. Godavel had an opportunity to seek leave to amend. It failed to do so. It was on notice for almost a year about the pleading deficiencies and it did nothing. And there's no harm here. We're going to trial in the state action. Godavel, you know, refiled its state law claims. We go to trial next month. And it has a deceptive trade practices claim. Based on this record, we asked the court to affirm the district court's dismissal of Godavel's Lanham Act claim because Godavel failed to sufficiently plead its Lanham Act claim. And because Godavel never bothered to cure those deficiencies or to even ask the district court permission to do so. Thank you. Mr. Quinn. Good morning. My name is Tom Quinn and I represent defendants, THN Management LLC, the Home Mag Holding Company LLC, and Campbell Wiener Inc. in the underlying matter. And for purposes of today, we should make some differentiation. Ms. Lockwood's clients that she was just representing are the franchisees. My clients are the franchisors. Today, I will refer to my clients as THM Management or THM Management Franchisor. The plaintiff appellate alleges three acts in support of its Lanham Act violations in the amended complaint. The July 2018 email, the August 2018 email, and the THM front range media kit. There are multiple references regarding the emails in the amended complaint that is identified by Ms. Lockwood moments ago. The THM front range media kit is identified only in paragraphs 37 and 38. My clients, the THM franchisor, were not the authors or senders of the subject emails. My client, THM Management, the franchisor, was not a creator or alleged to be a creator of the THM front range media kit as stated in paragraphs 37. There is no allegation that the THM Management distributed the media kit or any false advertising anywhere in the complaint. In paragraph 37, the THM front range media kit is identified as an offensive document that is not created nor speaks to that document in the singular and does not reference THM Management Franchisor as an author. Paragraph 38 of the complaint identifies with the franchisee THM front range and that speaks to the individuals that were involved in the distribution. There is no allegation that THM management, the franchisor, distributed anything through the internet or through the U.S. mail in paragraph 38. Therefore, there is a complete failure to satisfy any Lanham Act element against THM Management under the worldwide association versus pure 10th circuit standard as noted by Judge Krieger in your underlying opinion or ruling. Therefore, because there's a complete failure to satisfy any allegation or any element of the Lanham Act, plaintiff's complaint, amended complaint, was properly dismissed under the Corrie v. Interstate Insurance 10th circuit standard for pleading in the case. Dismissal was appropriate. Now, there was a late effort by the plaintiff to cure this in paragraph 14. Your time has expired. Thank you. Are there any questions from the panel? No. Thank you, counsel. Case is submitted.